# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

DOUGLAS E. LAWRENCE,        )
                                      )
         Plaintiff,           )
                                      )
vs.                             )     No.:   **3:18-cv-00304**
                                      )               **REEVES/GUYTON**
STATE OF MARYLAND, et. al.    )
                                      )
         Defendants.       )

## MEMORANDUM OPINION

Plaintiff, Douglas Lawrence, acting *pro se*, has brought this action against Maryland ("State of Maryland"), Anne Arundel County, Maryland, and Anne Arundel County Office of Child Support Enforcement ("AACOCSE") for alleged violations as part of an international conspiracy against Plaintiff.  Plaintiff asserts claims for "lost wages for the retaliation against him," "slander and defamation," and "conspiracy to retaliate against Plaintiff and deprive him of his Civil and Constitutional rights."  The State of Maryland and the AACOCSE (collectively, "Maryland State Defendants") move the court to dismiss plaintiff's complaints against them, pursuant to Fed. R. Civ. Proc. 12(b)(1) because the court lacks subject matter jurisdiction over plaintiff's claims by virtue of the Eleventh Amendment to the U.S. Constitution.   For the reasons which follow, the Maryland State Defendants' motion will be granted, and this action will be dismissed.

# I.    <u>Factual Background</u>

The facts, taken from Plaintiff's complaint are as follows: On June 6, 2005, Roopa Dudley, Plaintiff's wife at the time, filed a petition in the District Court for Anne Arundel County, Maryland, alleging that Plaintiff committed domestic violence against Ms. Dudley.    On June 13, 2005, the court denied Ms. Dudley's petition for lack of evidence, and the result of that case was uploaded to the Maryland Judiciary's online case docket, a website that provides public access to the case files of the Maryland Judiciary.    After the court's denial of Ms. Dudley's petition, Plaintiff separated from Ms. Dudley and sought a divorce.    Plaintiff and Ms. Dudley agreed to a separation agreement and a judgment of absolute divorce was entered on October 13, 2006.    As part of the separation agreement, Plaintiff received visitation with their minor child.    On June 12, 2008, the Circuit Court for Anne Arundel County, Maryland found Ms. Dudley in contempt of court for interfering with Plaintiff's visitation.    The circuit court ordered Plaintiff to purchase a cell phone for his minor child to facilitate better telephone access and for Ms. Dudley to reimburse Plaintiff for $5,687.00 in legal fees.    Additionally, the circuit court reduced Plaintiff's child support obligation.

After serving in the U.S. Army from 1994 to 2008, Plaintiff worked in Afghanistan from 2008 to 2009 for both NCL Logistics and Host Nation Trucking ("HNT").    During the course of his employment, Plaintiff became concerned that HNT was involved in a "contract mechanism that allowed U.S. taxpayer money to indirectly fund enemies" of the U.S.    Plaintiff also became concerned with "a fraudulent AstroTurf Lobby scheme to profit from increasing U.S. military presence in Afghanistan."    A journalist, Aram Roston, contacted Plaintiff about his experience in Afghanistan, and Mr. Roston published Plaintiff's concerns in an article.    As a result of this

publication, counsel for the U.S. House of Representatives interviewed Plaintiff. And a subsequent investigation by the U.S. Military confirmed "the suspicions and assertions of the Plaintiff."

On April 15, 2010, approximately one month after Plaintiff's interview with counsel for the U.S. House of Representatives, the State of Maryland sent a request to Florida, where Plaintiff was temporarily domiciled, to register and enforce the reduced child support order entered on June 12, 2008. Based on information that Plaintiff was a resident of Tennessee and was not behind on child support payments, the State of Florida granted Plaintiff's motion to vacate registration of the foreign child support order and ordered an arrearage of $2,401.62 owed to the State of Florida be "zeroed out."

On October 29, 2010, AACOCSE notified Plaintiff at his Tennessee address that he owed $2,401.62 in past due child support. The AACOCSE reported the past due child support to credit agencies and threated action under the State Tax Refund Intercept. Plaintiff responded by providing records of all child support payments made since 2005 and evidence from the State of Florida that the $2,401.62 was not owed. On December 7, 2010, AACOCSE acknowledged that Plaintiff did not owe any past due child support and removed the negative report from the credit agencies.

On an unknown date in either 2010 or 2011, the 2005 domestic violence case filed against Plaintiff was incorrectly changed on the Maryland Judiciary's online case docket to reflect that a final protective order was issued on June 13, 2005, and that the case was closed on November 20, 2007. This change occurred without a hearing and without Plaintiff's knowledge. Plaintiff discovered the change in June of 2015 when a female acquaintance accused him of abusing his ex-

wife.

Sometime in 2011, Ms. Dudley did not allow Plaintiff visitation with their child. As a result of this refusal, in July 2011, Plaintiff filed a petition in the Circuit Court for Anne Arundel County for contempt and requested joint or primary custody. In April 2012, the circuit court denied Plaintiff's joint custody request. The circuit court also tripled Plaintiff's child support obligation, ordered Plaintiff to pay for his child's summer camps, and ordered him to provide health insurance for his child, a cell phone for his child as well as transportation for all visits. The circuit court also granted a judgment for past due child support in the exact amount Ms. Dudley was ordered to pay in the contempt proceeding in 2008. Plaintiff alleges that the circuit court was prejudiced by the errant entry of the sustained final protective order against him.

In 2011 and 2012, Plaintiff took leave from work to enforce the circuit court orders. When his employer questioned his need for leave, he referred them to the Maryland Judiciary's online case docket without knowing that the errant entry had been made. Plaintiff alleges that his supervisors were also prejudiced against him by the 2005 protective order incorrectly listed on the Maryland Judiciary's online case docket. Plaintiff believes that this error caused his employer to assign him extra work. Plaintiff categorized this error as "defamation by the State of Maryland, or collusion, or combination thereof, with the State of Maryland and the entities in Washington, District of Columbia and/or the state of Virginia." Plaintiff alleges that his employer threatened to terminate Plaintiff's employment after a dispute about overtime hours and due to his whistleblowing activity and the false claim that he abused Ms. Dudley.

In 2013, Plaintiff was fired and, subsequently, was unable to pay his child support. Additionally, during this time, his home in Georgia was foreclosed and his credit history was

damaged. In November 2013, Plaintiff gained employment with the Department of Defense. In June 2015, Plaintiff informed Ms. Dudley that his pay would increase with a new employer. Around this time, Ms. Dudley initiated an action against Plaintiff claiming that Plaintiff was behind on his child support payments. Based on false testimony by Ms. Dudley, AACOCSE sent a false affidavit with their request to the State of Georgia to enforce the child support order. After Plaintiff challenged the affidavit, the State of Maryland withdrew their request for enforcement. In June 2016, Plaintiff sought to have charges filed against Ms. Dudley for filing a false affidavit, but the Maryland District Commissioner and the State's Attorney's Office refused to charge her.

In June 2015, Plaintiff submitted a written petition to the Maryland District Court Clerk requesting that the State of Maryland make the change to the Maryland Judiciary's online case docket to reflect that a final protective order was not issued. The clerk denied the request and instructed Plaintiff to file a petition for expungement. Plaintiff did not allege in the complaint that he filed a petition for expungement.

Plaintiff has filed the instant Complaint alleging that the Maryland State Defendants, Anne Arundel County, Maryland, as well as various "persons known and unknown" in Maryland, Virginia, and Washington, D.C. engaged in a conspiracy to harm Plaintiff due to his disclosure of matters he discovered while working in Afghanistan for a private contractor. Plaintiff seeks $852,722 from the State of Maryland for lost wages "for the retaliation against him" and $2,000,000 for per se damagers for slander and defamation, conspiracy to retaliate against Plaintiff and deprive him of his rights.

Plaintiff also seeks declaratory and injunctive relief. Specifically, Plaintiff seeks reversal of the order by the Circuit Court for Anne Arundel County for Plaintiff to provide all transportation

for visitations.  He also has requested "a public apology from the State of Maryland, via Twitter by the Governor and the State of Maryland, and publicly in every Maryland, Washington, D.C., and Tennessee newspaper, delineating all illegal action taken against Plaintiff."  Plaintiff seeks "a halt to all collection activities for his debts, incurred as a result of the actions of Defendants and co-conspirators until this action is complete and resolved according to the final adjudication of this trial."  Second, Plaintiff seeks an injunction "to allow him to register his vehicle, a 2007 Toyota Tundra, in the state of Tennessee" because he is "unable to complete the payment to the state of Georgia for their Ad valorem tax."

Maryland State Defendants move to dismiss Plaintiff's complaint on the grounds that the court lacks subject matter jurisdiction by virtue of the Eleventh Amendment to the U.S. Constitution.  In response, Plaintiff asks the court to strike the motion to dismiss on the grounds that Maryland State Defendants are not immune under the Eleventh Amendment for violations of the Fourteenth Amendment.

Anne Arundel County, Maryland, also filed a motion to dismiss for failure to state a claim. And in his response to a show cause order from his failure to response to Anne Arundel County's motion, Plaintiff agreed with the arguments provided by Anne Arundel County and requested that this Court dismiss his claims against them.  In that same response to the show cause order, Plaintiff requested that this Court sustain his motion in opposition against the Maryland State Defendants' motion to dismiss.

In June of 2018, the Maryland State Defendants and Ms. Dudley enforced a child support order from the State of Maryland in the Circuit Court for Blount County, Tennessee.  Plaintiff accepts registration of the child support order but contests the amount of child support owed.

Plaintiff brings this claim to address these and related issues pertaining to Maryland State Defendants and Ms. Dudley.

## II.  Standard of Review

Pursuant to Rule 12(b)(1), a complaint may be dismissed for "lack of subject matter jurisdiction."  The party asserting jurisdiction bears the burden of establishing that subject matter jurisdiction exists.  *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).  Rule 12(b)(1) motions to dismiss based upon subject matter jurisdiction consists of two types.  Facial attacks to subject matter jurisdiction merely question the sufficiency of the pleadings, and courts should apply the Rule 12(b)(6) standard in considering them.  *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 816 (6th Cir. 2017) (quoting *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320 325 (6th Cir. 1990)).  In such a case, courts should accept the allegations in the complaint as true and construe them in a light most favorable to the nonmoving party.  *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  Factual attacks, the second type of challenge to the court's subject matter jurisdiction, do not question the sufficiency of the pleading's allegations, but rather contest the factual predicate for subject matter jurisdiction.  *Id.* In such a case, no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  *Id.*

## III.  Analysis

Given Plaintiff's lengthy and, at times, confusing complaint, it is helpful to specifically discuss the relief Plaintiff is requesting this Court grant him.  Plaintiff seeks $852,722 from the State of Maryland for lost wages "for the retaliation against him" and $2,000,000 for per se damages for slander and defamation, conspiracy to retaliate against Plaintiff and deprive him of

his rights.   Plaintiff seeks reversal of the child support order by the Circuit Court for Anne Arundel County requiring Plaintiff to provide all transportation for visitations with his child.   He also has requested "a public apology from the State of Maryland, via Twitter by the Governor and the State of Maryland, and publicly in every Maryland, Washington, D.C. and Tennessee newspaper, delineating all illegal action taken against Plaintiff."   Finally, Plaintiff has requested a permanent restraining order against Ms. Dudley.

In Plaintiff's Complaint, he included the Maryland State Defendants, Anne Arundel County, Maryland, and Ms. Dudley.   On September 5, 2019, in his response to this Court's Order to Show Cause, Plaintiff requested that this Court dismiss his claims against Anne Arundel County, Maryland.   This Court will dismiss Plaintiff's claims against Anne Arundel County.   Therefore, the Court does not address any of the claims against Anne Arundel County, Maryland.

### a. 42 U.S.C. § 1983 Federal Civil Rights Claims

As a threshold matter, this Court concludes that all 42 U.S.C. § 1983 federal civil rights claims brought against "known and unknown person(s) acting in official capacity of the State of Maryland" must be dismissed with prejudice.   After filing his complaint, Plaintiff failed to exercise due diligence to take discovery and conduct a reasonable investigation to promptly determine the actual names of the officials.   Plaintiff has not timely made a motion pursuant to Fed. R. Civ. P. 15(a) for leave to amend his complaint to correctly identify the officials by their real names.   Moreover, Plaintiff has not timely effected service of process upon the individual unknown defendants identified in the complaint as required by Fed. R. Civ. P. 4(m).

42 U.S.C. § 1983 itself does not contain a statute of limitations.   Where Congress does not specify a period of limitations in a federal statute for bringing a civil action, the Court is required

to apply the most closely analogous statute of limitations provided under the laws of the State of Tennessee. *Moore v. Tennessee*, 267 F. App'x 450, 455 n. 8 (6th Cir. 2008); *Eidson v. State of Tennessee Department of Children's Services*, 510 F.3d 631, 634 (6th Cir. 2007); *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005); *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003); *Sutton v. Bloom*, 710 F.2d 1189-90 (6th Cir. 1984).

Under Tennessee law, the applicable statute of limitations for a 42 U.S.C. § 1983 federal civil rights case is one year. Tenn. Code Ann. § 28-3-104(a)(3) provides that actions brought under the federal civil rights acts shall be commenced within one year after the cause of action accrues. *Moore*, 267 F. App'x at 455; *Roberson*, 399 F.3d at 794; *Sharpe*, 319 F.3d at 266; *Hughes v. Vanderbilt University*, 215 F.3d 543, 547 (6th Cir. 2000); *Merriweather v. City of Memphis*, 107 F.3d 396, 398 (6th Cir. 1997); *Berndt v. Tennessee*, 796 F.2d 879, 883 (6th Cir. 1986); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984); *Wright v. State of Tennessee*, 628 F.2d 949, 951 (6th Cir. 1980).

The statute of limitations accrues and commences to run when the plaintiff knows or has reason to know of the injury that is the basis of the complaint. *Kelly v. Burks*, 415 F.3d 558, 561 (6th Cir. 2005); *Roberson*, 399 F.3d at 794; *Sevier*, 742 F.2d at 273. Plaintiff provides a sporadic timeline, however, even if this Court determines that the date of accrual was the day the complaint was filed, July 25, 2018, Plaintiff had one year from July 25, 2018, within which to file suit on his 42 U.S.C. § 1983 claims. On July 25, 2019, the statute of limitations expired on any cause of action that Plaintiff may have against "persons known and unknown" acting in official capacity for the Maryland State Defendants under 42 U.S.C. § 1983 and such claims are now time-barred. Plaintiff did not timely amend his complaint prior to July 25, 2019, to identify these "known and

unknown person(s)" by their real names and add them as defendants to this action.

Where a plaintiff is temporarily unable to ascertain a defendant's actual name, the plaintiff may initially file a complaint that names an unknown defendant by using a "John Doe," "Richard Roe" or similar pseudonym. However, simply identifying an unknown defendant in the complaint by "persons known and unknown" is not enough to commence a civil action against that unknown defendant. A civil action cannot be commenced against a fictitious party such as an unknown person. *Bufalino v. Michigan Bell Telephone Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968) (civil action against Doe defendants never commenced because they were not identified by their real names and not served with process); *see also Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) (citing *Bufalino*, 404 F.2d at 1028); *Pierce v. Hamblen Cty., Tenn.*, No. 2:09-CV-34, 2009 WL 2996333, at *1 (E.D. Tenn. Sept. 16, 2009); *Cox v. Reagan*, No. 3:06-CV-250, 2009 WL 2579655, at *5 (E.D. Tenn. Aug. 17, 2009); *Dubose v. City of Morristown*, No. 2:07-CV-115, 2009 WL 1766008, at *6 (E.D. Tenn. June 22, 2009).

Until Plaintiff files an amended complaint under Fed. R. Civ. P. 15 that identifies and adds or joins an unknown person by his true name, the allegations against that person in the complaint are mere surplusage. *Pierce*, 2009 WL 2996333, at *1; *Reagan*, 2009 WL 2579655, at *5; *Dubose*, 2009 WL 1766008, at *6; *Dunn v. Paducah International Raceway*, 599 F. Supp. 612, 613 n. 1 (W.D. Ky. 1984). A civil action is commenced against an unknown defendant when the complaint is amended under Rule 15 to specifically name and identify that defendant by her true name and the plaintiff effects service of process upon that named defendant in compliance with Rule 4. *Id.* The "persons known and unknown" in Plaintiff's complaint have never been properly joined in this lawsuit and served with process.

10

At this juncture it is too late for Plaintiff to take more discovery on this issue, or to make a motion pursuant to Fed. R. Civ. P. 15(a) for leave to amend his complaint to identify the unknown defendants by their real names and add or join them as individual defendants in this case. Even if Plaintiff now knows or could determine the real names of the unknown defendants, a motion by Plaintiff to amend his complaint under Rule 15 at this point in time to correct the problem would be futile. It is too late to add or substitute new defendants into this case. The federal civil rights claims brought against the unknown defendants under 42 U.S.C. § 1983 are time-barred by the statute of limitations. New party defendants may not be added to a complaint after the statute of limitations has run. If Plaintiff were to attempt to amend his complaint to identify the unknown defendants by their real names, the amendment would not relate back to the date when the original complaint was filed for purposes of applying the statute of limitations.

Fed. R. Civ. P. 15(c)(1)(C)(ii) provides that an amendment to a pleading relates back to the date of the original pleading when the amendment changes the party or the naming of a party against whom a claim is asserted if the party to be brought in by amendment "knew or should have known that the action would have been brought against it, but for a **mistake** concerning the proper party's identity." (Emphasis added). A plaintiff's lack of knowledge pertaining to an intended defendant's identity does not constitute a "mistake concerning the proper party's identity" within the meaning of Rule 15(c)(1)(C)(ii). Amending a complaint to add or substitute a named defendant for an unidentified defendant is considered a change in parties, not a mere substitution of parties. *Moore*, 267 F. App'x at 455-56; *Treadway*, 75 F.3d at 240; *Pierce*, 2009 WL 2996333, at *1-2; *Dubose*, 2009 WL 1766008, at *6.

Additionally, the plaintiff's claims against the unknown defendants are also dismissed on

the alternative ground that Plaintiff failed to identify them by their real names and effect service of process upon them within 120 days from the filing of the original complaint as required by Fed. R. Civ. P. 4(m).   *Dubose*, 2009 WL 1766008, at * 6; *Doughty v. City of Vermillion*, 118 F. Supp.2d 819, 821 n. 1 (N.D. Ohio 1999).

Accordingly, all 42 U.S.C. § 1983 federal civil rights claims brought against "known and unknown person(s) acting in official capacity of the State of Maryland and Anne Arundel County, Maryland," are dismissed with prejudice.

### b. Eleventh Amendment Immunity

The Eleventh Amendment provides as follows:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI.   It is well settled and a fundamental principle of federalism that the Eleventh Amendment bars suit against a state and/or one of its agencies in federal court, unless the state has waived its sovereign immunity or Congress has overridden it.   *See Han v. Louisiana*, 134 U.S. 1, 1-12 (1890); *Salt Lick Bancorp v. F.D.I.C.*, 187 F. App'x 428, 442-43 (6th Cir. 2006). The immunity applies to state agencies, departments, and/or subdivisions.   *See Ernst v. Rising*, 427 F.3d 351, 358-60 (6th Cir. 2005); *see also Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017).

Plaintiff does not identify any facts that would support a finding that the State of Maryland has waived its immunity or that Congress has expressly overridden it.   The State of Maryland has waived its sovereign immunity for specific types of cases brought in its state courts, *see* MD. CODE, ANN., STATE GOV'T, § 12–101, *et seq,* however, it has not waived its immunity under the Eleventh

Amendment for suits in federal court. *Dixon v. Baltimore City Police Dep't*, 345 F. Supp.2d 512, 513 (D. Md. 2003). And Congress did not "explicitly and by clear language" express its intent to "abrogate the Eleventh Amendment immunity of the States" in enacting 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332, 341-43 (1979). Therefore, Plaintiff's claims against the State of Maryland are barred.

The Maryland State Defendants assert that the AACOCSE is an agency of the State of Maryland and entitled to Eleventh Amendment immunity, and Plaintiff conceded in his response to the show cause order that the AACOCSE is an agency of the State of Maryland. As a result, Plaintiff's claims against the AACOCSE are also barred, as Eleventh Amendment immunity applies to state agencies, departments, and/or subdivisions. *See Ernst*, 427 F.3d at 358-59; *see also Boler*, 865 F.3d at 410.

The complaint asserts claims against "persons known and unknown acting in official capacity" of the Maryland State Defendants. These claims are still barred by the Eleventh Amendment because Eleventh Amendment immunity "protects states, as well as state officials sued in their official capacity for money damages, from suit in federal court." *Boler*, 865 F.3d at 409-10.

In *Ex parte Young*, the Supreme Court announced an exception to Eleventh Amendment sovereign immunity for claims for relief against individual state officials in their official capacities. *Ex Parte Young*, 209 U.S. 123 (1908). In order to fall within the *Ex parte Young* exception, a claim must seek prospective injunctive relief against an individual state official in their official capacity and that claim must seek to end a continuing violation of federal law. *Diaz v. Michigan Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013).

Plaintiff only seeks injunctive relief from the Maryland State Defendants in two forms. First, Plaintiff seeks modification of a child custody order from the Circuit Court for Anne Arundel County for Plaintiff to provide all transportation for visitations. Plaintiff has requested that this Court order Ms. Dudley to provide all transportation. Second, Plaintiff seeks "a public apology from the State of Maryland, via Twitter by the Governor and the State of Maryland, and publicly in every Maryland, Washington, D.C. and Tennessee newspaper, delineating all illegal action taken against Plaintiff."

Neither request is an injunction to end a continuing violation of federal law. Switching the parent that is responsible for providing transportation for their child does not end an ongoing violation of federal law. And the issuance of an apology also does not pertain to ending a continuing violation of federal law. Even if Plaintiff's allegations are found to be true, a public apology might repair some of the reputational harm Plaintiff alleges has occurred, but it will not

stop an ongoing violation of law from occurring. Therefore, the *Ex Parte Young* exception to Eleventh Amendment immunity does not apply.

Moreover, per the domestic relations exception discussed below, this Court does not have jurisdiction to change a State of Maryland child custody order. The domestic relations exception to federal diversity jurisdiction precludes federal district courts from handling child custody orders as well as divorce and alimony orders. *Danforth v. Celebrezze*, 76 F. App'x 615, 616 (6th Cir. 2003).

In his response to Defendant's motion to dismiss, Plaintiff argues "the Fourteenth Amendment acts of its own force whenever a state's actions deny Due Process and Equal Protection of laws, as delineated within [Section 1] of the Fourteenth Amendment. State sovereign immunity for those persons acting under its auspices is automatically relinquished in such cases." He further argues "where Section 1 of the Fourteenth Amendment has been violated, and comes into direct conflict with the Eleventh Amendment, the Fourteenth Amendment prevails." Plaintiff contends that he was denied due process because the online case docket showed that a protective order had been filed, and he was not given the opportunity to "defend himself and bring witnesses and evidence to bear on this outcome."

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause of the Fourteenth Amendment has both a substantive and a procedural component. *Range v. Douglas,* 763 F.3d 573, 588 (6th Cir. 2014). Substantive due process is "[t]he doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed." *Id.* at 588 (quoting *Pearson v. City of Grand Blanc,* 961 F.2d 1211, 1216 (6th Cir.1992)). "It protects a narrow class of interests, including those

enumerated in the Constitution, those so rooted in the traditions of the people as to be ranked fundamental, and the interest in freedom from government actions that shock the conscience." *Id.*

"Procedural due process is traditionally viewed as the requirement that the government provide a fair procedure when depriving someone of life, liberty, or property.'" *Ctr. for Powell Crossing, LLC v. City of Powell, Ohio*, 173 F. Supp. 3d 639, 657 (S.D. Ohio 2016) (internal quotation marks omitted) (quoting *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012)). To establish a procedural due process claim, a plaintiff must show: (1) she had a life, liberty, or property interest protected by the Due Process Clause; (2) she was deprived of the protected interest; and (3) the state did not provide her an adequate procedural process. *Daily Servs., LLC v. Valentino,* 756 F.3d 893, 904 (6th Cir. 2013). And courts may dismiss a procedural due process claim if the state provides an adequate process to remedy the deprivation of the protected interest. *Id.* at 907.

In his response, Plaintiff argues he was denied due process because he was not given the opportunity to "defend himself and bring witnesses and evidence to bear on this outcome." Plaintiff is making a procedural due process claim as he is arguing that the procedure was flawed because there was not one. Thus, Plaintiff must meet the three requirements to establish this claim.

This Court concludes that because at least one adequate state remedy was available to provide Plaintiff with the opportunity to fix the online case docket, he has failed to establish the third element, and, as such, fails to establish a procedural due process claim. Plaintiff's complaint states he was informed by the Maryland District Court Clerk that he could solve this problem by filing a petition for expungement in the Maryland District Court. Plaintiff's complaint does not allege that Plaintiff filed such petition. Therefore, without addressing the other two elements,

Plaintiff has failed on the third element.

All of Plaintiff's claims against the Maryland State Defendants are barred by the Eleventh Amendment. Plaintiff's claim for $852,722 from the State of Maryland for lost wages and $2,000,000 for slander, defamation, and conspiracy to retaliate against Plaintiff are both barred by the Eleventh Amendment. Finally, Plaintiff's request for a public apology from the State of Maryland is also barred by the Eleventh Amendment.

### c. Domestic Relations Exception

The pleadings of pro se litigants must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). However, "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted). And this Court is not required to construct a claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would "transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

Rule 12(h)(3) of the Federal Rules of Civil Procedure provides, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." And a district court has the authority to dismiss a complaint on its own initiative for lack of subject matter jurisdiction. *West v. Adecco Emp't Agency*, 124 F. App'x 991, 992 (6th Cir. 2005). Federal district courts are courts of limited jurisdiction, and their powers are enumerated in Article III of

the Constitution.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Hudson v. Coleman*, 347 F.3d 138, 141 (6th Cir. 2003) ("[I]t is well established that federal courts are courts of limited jurisdiction, possessing only that power authorized by the Constitution and statute.").   The party that seeks to invoke a federal district court's jurisdiction bears the burden of establishing the court's jurisdiction.  *Kokkonen*, 511 U.S. at 377.

Plaintiff seeks modification of the April 13, 2012, child custody order from the Circuit Court for Anne Arundel County requiring Plaintiff provide all transportation for his minor child to visit him in Tennessee.   Plaintiff asks this Court to modify that order and require Ms. Dudley to provide all transportation via "direct flight from Washington, D.C. to Plaintiff in Knoxville, Tennessee."   Plaintiff also seeks a permanent restraining order prohibiting Ms. Dudley from "phoning, texting, emailing, or coming anywhere near the Plaintiff" other than to arrange visitation and receive updates regarding their child.   Plaintiff's claims must be dismissed because this Court lacks subject-matter jurisdiction.

While couching his complaint as alleging violations of his constitutional rights, Plaintiff is actually challenging the State of Maryland's child custody proceeding, and federal courts do not have jurisdiction to resolve domestic relations matters.  *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992); *Kelm v. Hyatt*, 44 F.3d 415, 420 (6th Cir. 1995).   Domestic relations issues are within the exclusive jurisdiction of the states and fall outside the scope of federal jurisdiction.  *Danforth*, 76 F. App'x at 616.   The U.S. Supreme Court proclaimed that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states and not to the laws of the United States."  *In re Burrus*, 10 S.Ct. 850, 853 (1890).   Thus, federal courts have universally declined to exercise jurisdiction in matters involving domestic relations.  *Danforth*, 76 Fed. App'x at 616.   Although the domestic relations exception does not apply to a civil action

that merely has domestic relations overtones, federal courts lack jurisdiction where the action is a mere pretense and the suit is actually concerned with domestic relations issues. *Id.* at 616 (citation omitted).

The Sixth Circuit discussed the domestic relations exception in two recent cases, *Alexander v. Rosen*, 804 F.3d 1203 (6th Cir. 2015), and *Chevalier v. Estate of Barnhart*, 803 F.3d 789 (6th Cir. 2015). In *Chevalier*, the Sixth Circuit specified that the domestic relations exception applies only when a plaintiff sues in federal court for divorce, alimony, or child custody. *Chevalier*, 803 F.3d at 794. "When analyzing the applicability of the domestic-relations exception, we must focus on the remedy that the plaintiff seeks: Does the plaintiff seek an issuance or modification or enforcement of a divorce, alimony, or child-custody decree?" Id. at 797.

In *Alexander*, the plaintiff claimed that several judges and state administrative employees conspired against him in imposing a child support order against him. *Alexander*, 804 F.3d at 1204–05. Plaintiff's claims required the application of "federal law to determine whether the officials overseeing his child support case conspired against him." *Id.* at 1205–06. The Sixth Circuit held that "because [the plaintiff] does not request that we issue a 'divorce, alimony, or child custody' decree or that we 'modify or interpret an existing' decree" the domestic relations exception did not apply. *Id*. at 1205. Therefore, the Court could "resolve [the plaintiff's] claims without entangling ourselves in difficult questions of state family law, which is what the domestic relations exception was designed to prevent." *Id*. at 1206.

Additionally, a federal district court in Kentucky recently dealt with the issue of whether the domestic relations exception applies to a restraining order sought by one parent of a child against the other parent of the child. *Harden v. Stoker*, No. 3:15-CV-P312-DJH, 2015 WL 7302775 (W.D. Ky. Nov. 18, 2015). That court stated that to "award such injunctive relief would

require this Court to apply Kentucky child custody law, question the state family court's custody determinations, and address the merits of Plaintiff's dispute with the child's mother. These considerations are what the domestic relations exception was designed to prevent." *Id.* at *3. The court concluded that the domestic relations exception applied and dismissed the case for lack of subject matter jurisdiction. *Id.*

Plaintiff in the instant case requests this Court modify a child custody order from the Circuit Court for Anne Arundel County to require Ms. Dudley to provide all transportation when their child visits Plaintiff in Knoxville. Plaintiff also seeks a permanent restraining order prohibiting Ms. Dudley from all contact with Plaintiff other than to arrange visitation and receive updates regarding their child. Plaintiff's claims must be dismissed because this Court lacks subject-matter jurisdiction over this case. To award such relief would require this Court to apply state child custody law, question the Circuit Court for Anne Arundel County's determination in their custody order, and address the merits of Plaintiff's dispute with Ms. Dudley. These considerations fall under the domestic relations exception and prohibit this Court from ruling on them. *Ankenbrandt*, 504 U.S. at 703; *Kelm*, 44 F.3d at 420; *Harden*, 2015 WL 7302775, at *3.

It is unclear from Plaintiff's complaint and subsequent filings what relief Plaintiff is seeking concerning the child support case filed in the Circuit Court for Blount County by Ms. Dudley and Maryland State Defendants, but to the extent that Plaintiff requests action on that case, the domestic relations exception also applies. *Chevalier*, 803 F.3d at 794-95; *Danforth,* 76 F. App'x at 616. The enforcement of child support falls squarely under the domestic relations exception. *Id.*

Further, to the extent that a custody order has been entered by the Circuit Court for Blount County, a federal district court may not hear an appeal of a case already litigated in state court, per

the Rooker-Feldman doctrine. *United States v. Owens*, 54 F.3d 271, 274 (6th Cir. 1995). Instead, a party "must appeal a state court decision through the state system and then directly to the Supreme Court of the United States." *Id.* (citing *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)). Therefore, to the extent that Plaintiff is requesting this Court change or overrule the state court's decision, the Rooker-Feldman doctrine bars such a claim.

In short, this Court lacks subject matter jurisdiction over Plaintiff's claims because they fall exclusively within the jurisdiction of the state courts. This Court cannot grant the relief Plaintiff seeks—alteration of a Circuit Court for Anne Arundel County child support order and a permanent restraining order against Ms. Dudley. *See Ankenbrandt*, 504 U.S. at 703; *Kelm*, 44 F.3d at 420; *Harden*, 2015 WL 7302775, at *3. Therefore, Plaintiff's claims regarding modifying the child support order and providing a permanent restraining order are dismissed for lack of subject matter jurisdiction.

In Plaintiff's Complaint, he included Maryland State Defendants, Anne Arundel County, and Ms. Dudley as parties to this lawsuit. Per Plaintiff's request, this Court will dismiss Plaintiff's claims against Anne Arundel County. Therefore, the Court does not address any of the claims against Anne Arundel County, Maryland. Because this Court has held that all of Plaintiff's claims against the Maryland State Defendants are barred, the only defendant left is Ms. Dudley.

In his complaint, Plaintiff failed to make a claim for relief from Ms. Dudley other than requesting that this Court implement a restraining order against her and modify the Circuit Court for Anne Arundel County's child support order. Given the Court's finding that these two requests for relief are barred, Plaintiff does not have any remaining claims against Ms. Dudley. As such, Plaintiff does not have any claims left against any defendant, and this case must be dismissed in its entirety.

Plaintiff requested injunctive relief in two forms.  First, Plaintiff seeks "a halt to all collection activities for his debts, incurred as a result of the actions of Defendants and co-conspirators until this action is complete and resolved according to the final adjudication of this trial."  Second, Plaintiff seeks an injunction to allow him to register and drive his vehicle in the state of Tennessee to appointments, hearings, and trial "until this action is complete and resolved according to the final adjudication of this trial."

As noted above, this Court has decided to dismiss Plaintiff's claims entirely.  Therefore, both requests for injunctive relief are moot given this Court's decision to dismiss.

## IV.    <u>Conclusion</u>

Plaintiff's motion to strike defendant's motion to dismiss [Doc. 14] is DENIED.  In addition, for the reasons stated above, the court finds that Plaintiff's claims against Maryland State Defendants are barred by the Eleventh Amendment, the domestic relations exception, and the statute of limitations.  Because this Court lacks jurisdiction to adjudicate Plaintiff's claims, Maryland State Defendants' motion for partial dismissal of Complaint [Doc. 11] is GRANTED, whereby this action is hereby DISMISSED in its entirety.

Further, Plaintiff's request to dismiss his claims against Anne Arundel County [Doc. 47] is GRANTED.

All remaining motions [Doc. 28, 30, 32, 33, 38, and 41] are DENIED AS MOOT.

**ORDER TO FOLLOW**

_____
**CHIEF UNITED STATES DISTRICT JUDGE**